HARTFORD STEAM BOILER INSPECTION & INSURANCE COMPANY, Appellant, v. SARAH ALEXANDER et al., Appellees.

No. 41585.

JANUARY 17, 1933.

Penningroth & Holmes and Burton Russell, for appellant.

R. K. Craft and John B. Dyer, for appellees.

MITCHELL, J.—The appellant commenced an action in equity to foreclose a real estate mortgage against the appellees. The petition was filed on July 30, 1930. Attached to the petition was a copy of the mortgage. The mortgage provided for the appointment of a receiver, as follows:

"That the court in which suit is brought to foreclose this mortgage shall, upon motion of the complainant, without notice to the defendants in said cause, appoint a receiver for the land and premises above described and mortgaged, with power to enter upon, cultivate and operate the same, and collect the rents, issues and profits thereof during the pendency of such suit and up to the time when the purchaser at foreclosure sale shall be entitled to the possession

thereof, and with the usual powers of Receivers in such cases, and the net profits and avails thereof shall be applied toward the payment of the accrued and accruing interest, taxes and assessments, insurance, other liens and encumbrances and disbursements paid and discharged under the terms hereof, * * *"

The mortgage also contained the following clause with regard to the payment of taxes:

"In the event the first party fails to pay all taxes or assessments, or to keep the buildings, fixtures and fences on said premises in good repair and insured as above provided, said MORTGAGEE, its successors or assigns, or the legal holder or holders of the said Principal Bond or any of them, may pay such taxes or assessments, or redeem said premises from tax sale, or make repairs, or procure insurance, and all moneys paid for any such purpose and all other moneys paid out by said MORTGAGEE, its successors or assigns, or the legal holder or holders of the said Principal Bond or any of them, to protect the lien of this mortgage and the security intended to be effected hereby shall be immediately due and payable, with interest thereon at the rate of eight per centum (8%) per annum, and become so much additional indebtedness, secured by this mortgage; * * *"

A decree of foreclosure was entered on the 6th day of December, 1930, which provided that the appellant's application for the appointment of a receiver was continued. A special execution was issued and sale had on January 12, 1931. The property was sold and bid in by the appellant, leaving a deficiency judgment of $201.-50. The property involved in the action was not the homestead of the appellees. On the 20th day of February, 1931, the district court of Dallas County entered an order appointing a receiver, said order providing as follows:

"It is further ordered that any rents or moneys collected by the Receiver should be held by her subject to the order of Court."

Thereafter said receiver duly qualified and letters of receivership were issued.

On March 5, 1932, the receiver filed a report setting out that there had come into her hands from the rentals received from said land the sum of $659.24; that the parties interested in said rentals

were all making adverse claims, seeking the distribution of said money; and the receiver asked that the court direct her in the distribution of said rentals. On the 16th day of March, 1932, the appellant filed application for distribution of funds in the hands of the receiver. In said application the appellant sets out that the 1929 taxes on said premises were not paid, and that at the tax sale held by the treasurer of Dallas County said premises were sold for the 1929 taxes in the amount of $258.35; and that thereafter the 1930 taxes were unpaid, being in the amount of $246.86, which taxes were paid by the holder of said tax sale certificate, making the total principal sum paid for taxes in the amount of $505.21, which, together with the penalty and interest thereon totaled $579.60. The appellant redeemed from said tax sale on March 8, 1932, and asked that the court enter an order that the said funds in the hands of said receiver be distributed as follows: (1) costs of receivership; (2) bond premium of receiver; (3) compensation of receiver; (4) redemption from tax sale; (5) balance applied upon the deficiency judgment.

The matter was submitted to the court, and the evidence shows that on the 9th day of February, 1932, there was due on said tax certificate of redemption the sum of $576.27, and that said redemption was made by simply surrendering the certificate of original purchase to the auditor of Dallas County, and that it was surrendered by the Midland Mortgage Company, agents for the Hartford Steam Boiler Inspection and Insurance Company, the appellant. The court entered decree on the 16th day of March, 1932, ordering and directing the receiver to distribute the funds in her hands in the following manner: (1) payment of costs of receivership, including fee for receiver; (2) court costs in the amount of $7.55; (3) to clerk of the district court of Dallas County, Iowa, in satisfaction of deficiency judgment and interest, which amount was agreed upon by the parties as correct, $220; (4) the balance to the defendants (appellees) in the sum of $396.69.

The appellant excepted to that part of the decree which directed the receiver to pay to the appellees the sum of $396.69.

The mortgage in this case provided that in the event the mortgagor failed to pay taxes the mortgagee might pay them, or redeem the premises from tax sale, and all moneys paid for such purposes, and all other moneys paid out to protect the lien of the mortgagee

should immediately be due and payable and become so much additional indebtedness secured by the mortgage.

In the case of Cedar Rapids Nat. Bank v. Todd, 199 Iowa 957, at 962, we said:

"As to the item of $173 for taxes upon the mortgaged premises, the situation has its perplexity. The defendants were not personally liable for such tax, but it would constitute a superior lien upon their property. If they should redeem, then they lost nothing by the payment, and the plaintiff gained nothing. On the other hand, if the plaintiff should acquire a sheriff's deed, pursuant to the execution sale, the reverse is true. Two courses were open to the plaintiff, as mortgagee. It could have paid the taxes in advance of decree, and, under the terms of its mortgage, could have had the amount thereof included in its recovery. In such event, such amount would be merged in the decree and in the deficiency judgment. On the other hand, the plaintiff had also the right to withhold payment of the taxes and to sell the mortgaged property under execution, subject to the lien thereof. The existence of the superior lien would necessarily affect the amount of the plaintiff's bid at the execution sale. Its bid actually made must be presumed to have been made subject to the lien, and to have been reduced accordingly. The bid at the execution sale and the payment of the $50 deficiency judgment must be deemed a full satisfaction of the decree."

Appellant acquired sheriff's deed and was in the position of a title holder at the time this matter was tried. Receivership provisions in mortgages are remedial (Union Savings Bank & Trust Co. v. Carter, 214 Iowa 1131).

Appellant relies upon the cases of Hakes v. Phillips, 204 Iowa 603, and Olson v. Abrahamson, 214 Iowa 150, as being in point with the case at bar. In the Hakes case, the original decree, which was entered with the approval of the defendants, provided that a receiver should be appointed and that he should pay taxes; and in the Olson case there was a stipulation between the parties in connection with the case, and the stipulation expressly settled the question before the sale was had. In the case at bar there was no decree in reference to payment of taxes, nor was there any stipulation between the parties. The original decree provided for the continuance of the receivership, and the order entered at the time the receiver was appointed simply provided that the receiver was to hold

the funds subject to the order of the court. The appellant argues that it made its bid at the execution sale relying upon the alleged duty of the receiver to pay the taxes or redeem from the tax sale. There is no evidence that it did so rely, but appellant argues that there is a presumption that it did. This argument is unsound for the reason that the decree provided that the execution purchaser might pay taxes or redeem from tax sale, and add the amount so paid to the amount required to redeem; and besides, at the time of the execution sale there was no receiver appointed, and the question of whether there ever would be one appointed was left open by the continuance of the hearing on the question of the right to have a receiver appointed.

In the case at bar the appellant had the opportunity of paying the taxes and adding the amount which it paid to its judgment at the time the judgment was entered; or it had the right to bid in the property, taking into consideration the amount of the lien of the taxes against the land as a prior lien, which would of necessity increase the amount of the deficiency judgment which the appellant would have taken. At the time of the execution sale there was no receiver appointed, and therefore the appellant had no right to rely upon the payment of taxes out of the rents and profits. It bid in the land, knowing that the taxes were outstanding, knowing that they were a lien against the land. The trial court ordered that the funds in the hands of the receiver be applied, first, on the costs, and, second, on the deficiency judgment, and the balance paid over to the mortgagor. This is right and just and in accordance with the holdings of this court. ·

The decree of the trial court should be and the same is hereby—Affirmed.

KINDIG, C. J., and EVANS, STEVENS, ALBERT, ANDERSON, DONE-GAN, and UTTERBACK, JJ., concur.