**AMERICAN NATIONAL INSURANCE COMPANY, Plaintiff,**

v.

**Sidney T. SMITH et al., Defendants.**

**Civ. No. 890.**

United States District Court
N. D. Iowa, E. D.

Sept. 15, 1961.

Samuel T. Beatty, Waterloo, Iowa, receiver, pro se.

Max R. Teske, Jr., of Pike, Hoxie, Butler & Teske, Waterloo, Iowa, for defendant, The Waterloo Savings Bank.

F. E. Van Alstine, U. S. Dist. Atty., and William R. Crary, Asst. U. S. Dist. Atty., Sioux City, Iowa, **for** defendant U. S.

GRAVEN, District Judge (by assignment).

Samuel T. Beatty was a receiver in a real estate foreclosure action brought in this Court. He heretofore filed herein his final report as such receiver. In it he asked for allowance of fees and expenses. He also asked that the Court determine the disposition to be made of the balance remaining in his hands after the payment of fees and expenses. Notice of the hearing on the final report was given to all interested parties. The defendants, The Waterloo Savings Bank and the United States of America, made conflicting claims to the balance remaining in his hands as such receiver. No other parties made any claim to that balance.

At some time prior to May 1, 1956, Sidney T. Smith and Ardys Blanchard each became the owner of an undivided one-half interest in a tract of real estate located in the City of Waterloo, Black Hawk County, Iowa. Situated upon that tract was a building which contained twenty upstairs apartments and three ground floor commercial locations.

On May 1, 1956, Sidney T. Smith and Ardys Blanchard executed a promissory note in the principal sum of $85,000 due June 1, 1971. To secure the payment of that note, they executed a real estate mortgage on the tract. That note and mortgage were subsequently transferred to the plaintiff, American National Insurance Company. That mortgage was a first mortgage on the tract. On May 9, 1956, Sidney T. Smith and Ardys Blanchard executed two promissory notes to the defendant, The Waterloo Savings Bank, in the principal sum of $35,000 payable in monthly installments. To secure the payment of those notes, they executed a real estate mortgage on the tract. That mortgage was a second mortgage on the tract being subject to the first mortgage above referred to. Subsequently, the undivided one-half interest of Sidney T. Smith in the tract became part of the assets of a partnership known as Sid Smith and Company in which Sidney T. Smith was a general partner. The principal place of business of the partnership was in the City of Waterloo, Black Hawk County, Iowa. On June 10, 1958, the partnership executed two promissory notes to the Peoples Bank and Trust Company of Water-

loo, Iowa, in the principal sum of $100,-000 payable in monthly installments. To secure the payment of those notes the partnership executed a real estate mortgage upon the partnership's undivided one-half interest in the tract. That mortgage was a third mortgage upon that undivided one-half interest. It was also a lien on another tract not here involved. The Small Business Administration, an agency of the United States (15 U.S.C.A. §§ 631–651), was connected with this latter loan. The time when it first became connected with that loan does not appear. On June 5, 1959, the Peoples Bank and Trust Company assigned the notes and mortgage executed to it to the Small Business Administration. At that time the principal amount due on the notes was the sum of $68,-990.48. The Small Business Administration is the alter ego of the United States of America. Small Business Administration v. McClellan, 1960, 364 U.S. 446, 81 S.Ct. 191, 5 L.Ed.2d 200.

All of the mortgages and the assignments thereof were filed for record in the office of the County Recorder of Black Hawk County, Iowa.

Starting early in 1958 Sid Smith and Company, the partnership, became delinquent in the matter of payment of taxes due the Government. The Government made a number of assessments for the delinquent taxes and tax liens therefor were filed in the office of the County Recorder of Black Hawk County, Iowa. Those taxes did not become due and the tax liens therefor were not filed until a considerable time after the first mortgage of the plaintiff and the second mortgage of The Waterloo Savings Bank had been executed and filed for record. The Government makes no claim herein based on its tax liens.

On July 23, 1959, the plaintiff commenced an action in the District Court of Iowa in and for Black Hawk County to foreclose its first mortgage on the tract. The principal amount then due on the note secured by the mortgage was the sum of $76,864.50. The plaintiff made parties to the action all those who appeared to have an interest in the tract. The Waterloo Savings Bank and the United States of America were made parties defendant to that action. The United States of America removed the action to this Court. The plaintiff's mortgage contained a receivership clause but the plaintiff did not ask for the appointment of a receiver. The defendant, The Waterloo Savings Bank, filed an answer and a counterclaim and crossclaim. In its counterclaim and crossclaim it asked for the foreclosure of its second mortgage against the tract. The principal amount then due on the notes secured by its mortgage was the sum of $30,422.50. The mortgage contained a receivership clause but that defendant did not ask for the appointment of a receiver.

The defendant, United States of America, also filed an answer and a counterclaim and crossclaim. In its counterclaim and crossclaim it asked for the foreclosure of the third mortgage which had been assigned to the Small Business Administration. The principal amount then due on the notes secured by that mortgage was the sum of $68,990.48. That mortgage contained a receivership clause. In its counterclaim and crossclaim the defendant, United States of America, after referring to that clause, alleged:

> "That this defendant's security is inadequate and insufficient to satisfy the debt due to this defendant and this defendant is entitled to a Receiver to collect the rentals during the pendency of this action and during the year of redemption and to have the same first applied to any unsatisfied portion of this defendant's judgment."

Around the time the plaintiff instituted the present foreclosure action, bankruptcy proceedings were instituted against the partnership of Sid Smith and Company and Sidney T. Smith, a general partner of the partnership. They were subsequently adjudged bankrupt. Prior to the adjudication of bankruptcy, Samuel T. Beatty was appointed receiver by the Bankruptcy Court and

later he was appointed Trustee in Bankruptcy for three bankrupts. The loans secured by mortgages on the tract were in excess of the value of the tract and there was no equity in the tract for the estate of the bankrupts. The Bankruptcy Court made no effort to sell the tract either free of liens or subject to the liens. On motion of the defendant, United States of America, Samuel T. Beatty, as receiver and Trustee in Bankruptcy, was made a party to the present action.

On February 9, 1960, this Court made and entered herein judgments and decrees of foreclosure in favor of all three mortgagees on the notes and mortgages declared on by them. In those judgments and decrees, it was directed that the mortgaged tract be sold at special execution sale subject to the lien thereon of Black Hawk County for real estate taxes. At the time of entering the judgments and decrees of foreclosure, Samuel T. Beatty, as Trustee in Bankruptcy, was in possession of the tract and had been collecting the rents therefrom. As a matter of administrative convenience, this Court, in lieu of appointing a receiver as requested by the defendant, United States of America, designated Samuel T. Beatty to manage and collect the rents from the tract and at the end of the expiration of redemption he made a final report to the Court and disposed of the net rentals as ordered by this Court. The legal status of Samuel T. Beatty in connection with the tract was that of a receiver in the mortgage foreclosure action.

On April 1, 1960, the tract was sold at special execution sale by the United States Marshal for this District subject to the lien of Black Hawk County for real estate taxes. At the special execution sale the defendant, The Waterloo Savings Bank, bid the amount of $116,-101.97 for the tract which was accepted and approved, and a Marshal's certificate of sale was issued to that defendant. The bid of $116,101.97 was the full amount of the plaintiff's first mortgage lien and the second mortgage lien of the

defendant, The Waterloo Savings Bank, against the tract. At the time of the special execution sale, the amount due on the mortgage held by the defendant, United States of America, was approximately $70,000. At the special execution sale that defendant bid the sum of $10,000 for the tract in question and bid the sum of $2,000 for the other tract not involved herein, which left a deficiency judgment in favor of it in the sum of approximately $60,000. No redemption was made by the United States of America or any other party in interest of the Marshal's certificate of sale issued to the defendant, The Waterloo Savings Bank. Following the expiration of the year of redemption, that defendant received a Marshal's deed to the tract.

Following the expiration of the year of redemption, Samuel T. Beatty filed herein his final report as receiver in the mortgage foreclosure action. He reported that the total amount received by him was the sum of $19,186.13 and that he had made disbursements in the total sum of $15,122.80 and that he had on hand the sum of $4,063.33. He subsequently reported additional receipts of $86 and $150, which makes the total amount now in his hands the sum of $4,299.33. In his final report he asked that an allowance be made for his fees and expenses and that the Court direct what disposition be made of the balance remaining. The Court fixed a time and place of hearing on that report and notice was given to all interested parties. At the hearing conflicting claims were made as to the balance in the hands of Samuel T. Beatty by the defendant, The Waterloo Savings Bank, and the defendant, United States of America.

Samuel T. Beatty is an attorney. In addition to rendering the services usually rendered by a receiver, he rendered substantially all of the legal services usually rendered by the attorney for the receiver. He asked for an allowance of $1,000 for his fees and the sum of $27.79 for his expenses. The Court in a separate ruling and order is allowing him the sums requested. It was heretofore

noted that there was a net balance in the receivership of $4,299.33. Deducting therefrom the allowances referred to leaves a net balance in the receivership of $3,271.54, which is the amount in controversy between the defendants, United States of America and The Waterloo Savings Bank. It is to be noted that the mortgage of the defendant, United States of America, was a mortgage only on the undivided one-half interest of the partnership in the tract, while the mortgage of the defendant, Waterloo Savings Bank, was a mortgage on the interest of both owners of the tract. Thus, it would seem that the most the defendant, United States of America, could claim would be a one-half interest in the net balance in the receivership, or the sum of $1,635.77.

It was heretofore noted that the tract in question was sold at the special execution sale subject to the lien of Black Hawk County for real estate taxes. At the time of the special execution sale on April 1, 1960, the tract had been theretofore sold at tax sale for the 1958 real estate taxes against it. At the time of the special execution sale, the tract was subject to a lien for the 1959 real estate taxes against it which became due January 1st, 1960.

Section 629.1, Code of Iowa 1958, I.C.A., provides, in part, as follows:

"The holder of a sheriff's sale certificate * * * after the delinquency of any taxes * * * shall have a lien upon said real estate for such expenditures and interest thereon of equal priority with the lien so held by him upon his filing with the clerk of the district court in the county in which the land is situated, a verified statement of said expenditures and the dates thereof * * *."

Section 629.2, Code of Iowa 1958, I.C.A., provides: "When such advancements have been made by the holder of a sheriff's sale certificate the sum so advanced shall be a part of the amount required to redeem from said sheriff's sale."

On November 7, 1960, under the provisions of those Sections, the defendant, The Waterloo Savings Bank, filed with the Clerk of this Court a verified statement for taxes paid by it during the period of redemption which was still running. In that statement it stated that it had redeemed the mortgaged tract from a tax sale for the 1958 real estate taxes and had paid to effect said redemption the sum of $3,494.30. In that statement it further stated that it had paid the 1959 real estate taxes on the tract which amounted to $3,465.98. It claims a lien for such payments under the Sections above referred to.

On July 28, 1961, which was following the expiration of the period of redemption but during the pendency of the receivership, the defendant, The Waterloo Savings Bank, filed what it designated as an "Amended and Substituted Application For Reimbursement For Taxes Paid And Application for Disbursement of Income." In that application it recited the payment of the 1958 and 1959 taxes against the tract. In that application it stated that on July 19, 1961, it had paid the first half of the 1960 taxes against the tract in the amount of $1,839.75, including penalty. It stated therein that the second half of the 1960 taxes in the amount of $1,705.68 were due and unpaid. It further stated that on or about May 15, 1960, it paid for insurance coverage in connection with the tract the sum of $655.14. In that application it asked that it be reimbursed for the expenditures for taxes and insurance from the income of the receivership.

The 1960 taxes were not a lien against the tract at the time of the special execution sale on April 1, 1960. They were not in existence at that time. The earliest those taxes could become a lien would be in September, 1960. Those taxes became due January 1, 1961. Section 445.36, Code of Iowa 1958, I.C.A. They became due for the first time during the period of redemption and during the period of the receivership.

The controversy between the defendants, United States of America and The Waterloo Savings Bank, is centered around the provisions of what now appears as Section 654.14 of Chapter 654, Code of Iowa 1958, I.C.A. That Section was enacted in 1933 as a part of Chapter 181 of the Acts of the Forty-fifth General Assembly. That Chapter was as follows:

"Receivership Under Real Estate Mortgage
S. F. 115

"An Act relating to foreclosure of real estate mortgages; providing for the priority of liens on the rents, profits, avails and/or income derived from real estate as provided in said mortgage; defining the duty of a receiver as to leasing in such foreclosure; defining his duty as to the application of rents, profits, avails and/or income; repealing inconsistent acts and providing that it shall not affect pending litigation.

"*Be it enacted by the General Assembly of the State of Iowa:*

"Section 1. Whenever any real estate is encumbered by two or more real estate mortgages which in addition to the lien upon the real estate grant to the mortgagee the right to subject the rents, profits, avails and/or income from said real estate to the payment of the debt secured by such mortgage, the priority of the respective mortgagees under the provisions of their mortgages affecting the rents, profits, avails and/or incomes from the said real estate shall, as between such mortgagees, be in the same order as the priority of the lien of their respective mortgages on the real estate.

"Sec. 2. In any action to foreclose a real estate mortgage where a receiver is appointed to take charge of the real estate, preference shall be given to the owner in actual possession, subject to approval of the court, in leasing the mortgaged premises. The rents, profits, avails and/or income derived from said real estate shall be applied as follows:

"1. To the cost of receivership.

"2. To the payment of taxes due or becoming due during said receivership.

"3. To pay the insurance on buildings on the premises and/or such other benefits to the real estate as may be ordered by the court.

"4. The balance shall be paid and distributed as determined by the court.

"Sec. 3. So far as the provisions of this act may conflict with other acts or parts thereof the provisions of this act shall control.

"Sec. 4. This act shall not affect pending litigation.

"Sec. 5. This act being deemed of immediate importance shall be in full force and effect after its passage and publication * * *."

Section 2 of that Chapter now appears as Section 654.14 Code of Iowa 1958, I.C.A.

In the Iowa General Assembly the debates are not reported and the committee reports are usually limited to recommendations as to suggested action by the Assembly. See Note, The Inadequacy of Legislative Recording in Iowa, 35 Iowa Law Review 88 (1949). The legislative history as to Section 654.14 is meagre. Chapter 181 was enacted in the depth of the depression when thousands of real estate mortgages were being foreclosed and thousands of tracts of real estate were being sold for the nonpayment of taxes. The fact that the Section was enacted when such conditions were existing is indicative that the Iowa General Assembly was of the view that abuses had developed in connection with real estate mortgage receiverships. In January, 1933, just preceding the enactment of the Section, the Iowa Supreme Court had handed down its decision in the case of Hartford Steam Boiler Inspection & Insurance Co. v. Alexander, 215 Iowa 573, 246 N.W. 404. In that

case the plaintiff brought suit to foreclose a real estate mortgage. The plaintiff's mortgage contained a receivership clause. The plaintiff made application for the appointment of a receiver. The foreclosure decree provided that plaintiff's application for the appointment of a receiver be continued. A special execution sale was had of the mortgaged property. The plaintiff bid on the property, leaving a deficiency judgment of $201.50. Subsequently the Court appointed a receiver and ordered that any rents collected be held subject to the order of Court. Later the receiver filed his report and the plaintiff filed an application for distribution of the funds in the hands of the receiver. In that application it asked for reimbursement for the amount paid by it in redeeming the mortgaged tract from a tax sale for the 1929 taxes. The trial court denied the application. The plaintiff appealed. On appeal the ruling of the lower court was affirmed. The Iowa Supreme Court stated at page 406 of 246 N.W.:

"In the case at bar, the appellant had the opportunity of paying the taxes and adding the amount which it paid to its judgment at the time the judgment was entered; or it had the right to bid in the property, taking into consideration the amount of the lien of the taxes against the land as a prior lien, which would of necessity increase the amount of the deficiency judgment which the appellant would have taken. At the time of the execution sale there was no receiver appointed, and therefore the appellant had no right to rely upon the taxes being paid out of the rents and profits. It bid in the land knowing that the taxes were outstanding; knowing that they were a lien against the land. The trial court ordered that the funds in the hands of the receiver be applied, first, on the cost, and, second, on the deficiency judgment, and the balance paid over to the mortgagor. This is right and just and in accordance with the holdings of this court."

It is the claim of the defendant, The Waterloo Savings Bank, that the rule adopted in that case was changed by the enactment of Section 654.14 and that under the provisions of that Section the balance in the receivership should be paid to it as reimbursement for the real estate taxes paid by it. It is to be noted that the defendant makes no claim to that balance by virtue of the receivership clause in its mortgage or by virtue of any provisions in its mortgage relating to the matter of real estate taxes. It also is to be noted that the claim of the defendant, United States of America, is based upon the receivership clause in its mortgage. It is the contention of the defendant, United States of America, that under the facts in this case the disposition of the funds in the hands of the receiver is not within the scope of Section 654.14.

The defendant, United States of America, cites in support of that contention the case of Monroe v. Busick, 1938, 225 Iowa 791, 281 N.W. 486. In that case the plaintiff brought a real estate foreclosure action. The action went to judgment and decree and the mortgaged property was sold to him at special execution sale. A sheriff's certificate of sale was issued to him. Following the issuance of the sheriff's certificate to him, the plaintiff was appointed receiver to take charge of the rents and profits during the year of redemption. The plaintiff's foreclosure action was commenced in 1935. Prior to the commencement of the foreclosure action, the plaintiff paid the 1931 and 1932 taxes against the mortgaged property and later he paid the 1933 and 1934 taxes against it. The plaintiff in his final report as receiver made claim that he be reimbursed out of the rents for the taxes paid by him. No action was taken on his report as receiver. Busick, a co-owner of the mortgaged property, made redemption from the special execution sale by paying the full amount of the mortgage judgment with interest and costs. The judgment did not include the taxes. The plaintiff then brought an action in equity against Bu-

sick for the taxes paid by him. The plaintiff's mortgage contained a provision providing that upon the failure of the mortgagor to pay any of the taxes against the premises the mortgagee could pay them and the amount so paid would be secured by the mortgage. The trial court denied the plaintiff recovery for the taxes. On appeal that denial was affirmed. The Iowa Supreme Court stated at pages 487–88 of 281 N.W.:

"Under this state of the record it is clear that appellant might and should have included the taxes he advanced in the judgment which was finally taken, because they had become a part of the claim secured by the mortgage. He could not proceed to sell the property on the judgment, and in the action which we are now considering start a separate action to recover the taxes. He had the alternative of protecting himself by his bid, but this he did not do; and when Busick made redemption by paying the full amount of the judgment, interest, and costs, he acquired title free from any charge or lien of the taxes previously advanced by appellant. * * *

"This question has been before us on several occasions, and our holdings are against a claim made on the state of facts here disclosed.

"In Cedar Rapids National Bank v. Todd, 199 Iowa 957, 203 N.W. 390, a case somewhat different in its facts but like in principle, we said [page 392]: ' The defendants were not personally liable for such tax, but it would constitute a superior lien upon their property. If they should redeem, then they lost nothing by the payment, and the plaintiff gained nothing. On the other hand, if the plaintiff should acquire a sheriff's deed, pursuant to the execution sale, the reverse is true. Two courses were open to the plaintiff as mortgagee: It could have paid the taxes in advance of decree, and under the terms of its mortgage could have had the amount thereof included in its recovery. In such event, such amount would be merged in the decree and in the deficiency judgment. On the other hand, the plaintiff had also the right to withhold payment of the taxes and to sell the mortgaged property under execution, subject to the lien thereof. The existence of the superior lien would necessarily affect the amount of the plaintiff's bid at the execution sale. Its bid actually made must be presumed to have been made subject to the lien, and to have been reduced accordingly.' "

The Iowa Supreme Court, in support of its holding, cited the case of Hartford Steam Boiler Inspection & Insurance Co. v. Alexander, 1933, 215 Iowa 573, 246 N.W. 404.

The question directly before the Court in the case of Monroe v. Busick, supra, was whether a mortgage holder who had paid taxes due on the mortgaged property prior to commencing a foreclosure action and during the pendency of the action can maintan an independent action against one who redeems from the special execution sale for the recovery of the taxes so paid. The Court held that such an action could not be maintained. It is the contention of the defendant, The Waterloo Savings Bank, that although the decision in that case was rendered five years after the enactment of Section 654.14, heretofore set out, specifying the disposition of the funds in real estate mortgage receiverships, both the attorneys in the case and the Court overlooked that Section. However, it would seem that the provisions of that Section were not involved in the case, for, as noted, the report of the receiver in which reimbursement for taxes from the income of the receivership was involved was still pending undisposed of in the lower court.

It is the contention of the defendant, United States of America, that the mortgage judgment of the defendant, The Waterloo Savings Bank, having been satisfied by the special execution sale all rights of that defendant to the rents and

profits during the year of redemption terminated. It is the further contention of that defendant that, unless there is a deficiency judgment, a mortgagee of real estate has no right or interest to the rents from the mortgaged property during the year of redemption. It cites in support of those contentions the case of Stamp v. Eckhardt, 1927, 204 Iowa 541, 215 N.W. 609. In that case a receiver was appointed on the application of a senior mortgagee in connection with the foreclosure of his mortgage. The order appointing the receiver provided that the rents and profits of the premises were to be applied upon the indebtedness of the senior mortgage. The premises were sold on special execution sale for a sufficient amount to pay the senior mortgage in full. The holder of two junior mortgages which had not asked for the appointment of a receiver sought to claim the rents in the hands of the receiver. The trial court denied such claim and on appeal that ruling was affirmed. The Court stated, at page 611 of 215 N.W.: "The receivership in the instant case terminated eo instante when the judgment in favor of the senior mortgages was satisfied." The question of reimbursement of taxes paid by the mortgagee was not involved in that case. The case was decided several years prior to the enactment of Section 654.14.

It is the contention of the defendant, United States of America, that when the defendant, The Waterloo Savings Bank, at the special execution sale bid for the tract subject to the lien of Black Hawk County for taxes the full amount of its mortgage lien, it had no further lien upon nor interest in the rents of the mortgaged tract during the year of redemption. It is the contention of the defendant, United States of America, that The Waterloo Savings Bank in making its bid must be deemed to have bid the amount of the mortgage debt plus the taxes which were liens against the property. The defendant, United States of America, contends that The Waterloo Savings Bank having in substance included those taxes in its bid should not

be allowed to reimburse itself for such taxes from the rents from the property during the year of redemption. It would seem doubtful that the fact that the tract in question was expressly sold subject to the lien of Black Hawk County for taxes made much of a change in the legal situation. If nothing had been specified in the sale papers relating to the lien of Black Hawk County for taxes, the tract would have to have been, nevertheless, sold subject to such lien and a purchaser at the special execution sale would have to have such lien in mind when bidding for the property. It would seem that the legal situation is not changed by the fact that the defendant, The Waterloo Savings Bank, paid the taxes in question and asks reimbursement for the rents during the period of redemption instead of allowing the taxes to continue unpaid and then asking that they be paid out of the funds in the receivership. There is an extensive annotation on Remedy of Mortgagee Paying Taxes in 123 A.L.R. 1248 (1939). However, none of the cases therein referred to had to do with statutes such as Section 654.14 here involved.

There are no decisions of the Iowa Supreme Court construing or interpreting Section 654.14. However, its provisions seem to be quite clear and definite. It provides that in an action to foreclose a real estate mortgage where a receiver is appointed to take charge of the real estate, the rents and profits shall be applied:

"1. To the cost of receivership.

"2. To the payment of taxes due or becoming due during said receivership.

" * * *."

All of the taxes in question were either due or became due during the receivership.

It is to be noted that the taxes for the year of 1960 were not a lien against the tract at the time of the special execution sale or even in existence at that time, so it would seem that those taxes could not be deemed to have been included in the bid of the defendant, The Waterloo

Savings Bank. Those taxes became due January 1, 1961, which was during the period of redemption and during the receivership. The amount of those taxes alone is in excess of the balance in the receivership.

The Iowa Supreme Court has not, as heretofore noted, directly passed upon questions relating to the scope and application of Section 654.14. However, it would seem probable that that Court would hold that a receiver appointed in connection with a real estate foreclosure action would be obligated to apply the rents from the mortgaged property in accord with the provisions of Section 654.14. However, the fact that it seems probable that it would so hold would not necessarily be determinative of the rights of the defendant, United States of America, because of another feature.

The defendant, United States of America, became the owner of the notes held by it and the mortgage securing them in connection with carrying out the Congressional program for aid to small businesses. The fact that in the present case the aid was extended by taking an assignment of the notes and mortgage securing them rather than by a direct loan would not seem to be of legal significance. The mortgage of the defendant, United States of America, contains the following provision:

"Upon the filing of any action for the foreclosure of this mortgage, or at any time thereafter, whether prior to foreclosure sale or after sale, at any time before the purchaser thereat shall secure possession of the Mortgaged Property with the right to collect the rents, issues, income and profits thereof, the court in which such action is filed may appoint a receiver of the Mortgaged Property, without notice to Mortgagor, or any party claiming under Mortgagor, and without regard to the then solvency or insolvency of Mortgagor, or the person or persons liable for the payment of the indebtedness secured hereby, and without regard to the then value of the Mortgaged Property, with power to take possession thereof and collect the rents, issues, income and profits thereof during the pendency of the action and until the purchaser at foreclosure sale shall secure possession of the Mortgaged Property with the right to collect the rents, issues, income and profits thereof, and the court in which such action is filed may, from time to time, authorize said receiver to apply the net amounts in his hands in payment, in whole or in part, or any or all of the items following: (1) amount due upon the indebtedness secured hereby, (2) amount due upon any judgment or decree entered in any suit foreclosing this mortgage, (3) insurance of the improvements upon said premises, (4) taxes, special assessments or any other lien or charge upon the Mortgaged Property that may be or become superior to the lien of this mortgage or of any judgment or decree foreclosing the same, (5) all monies advanced by Mortgagee, its successors or assigns, or the holder of the Note, for any purpose authorized in this mortgage, or in the Note with interest on such advance, at the same rate per annum as is borne by the Note."

Under that provision it was provided that the Court, following the appointment of a receiver to collect the rents, could apply the rentals upon the deficiency remaining unpaid upon the mortgage debt or towards the payment of taxes or towards the payment of other items. It is the claim of the defendant, The Waterloo Savings Bank, that notwithstanding the discretion given the Court by that provision such discretion is restricted by the provisions of Section 654.14. In other words, it is the contention of the defendant, The Waterloo Savings Bank, that, in the matter of receiverships in connection with mortgage foreclosure actions brought by the United States of America, it is restricted by the provi-

sions of state law relating to such receiverships.

In the case of United States v. View Crest Garden Apts., Inc., 9 Cir., 1959, 268 F.2d 380, certiorari denied 1959, 361 U.S. 884, 80 S.Ct. 156, 4 L.Ed.2d 120, the United States brought an action to foreclose an F.H.A. mortgage on property in the State of Washington. The mortgage contained a receivership clause. The United States made application for the appointment of a receiver to collect the rents from the mortgaged property. The trial court denied the application on the ground that the state law of Washington was applicable and that under that law no sufficient showing had been made to warrant the appointment of a receiver. On appeal that ruling was reversed. The Court stated (268 F.2d at page 382):

> "No contention is made by the government that in the event Washington State law applies the trial court was in error in refusing the appointment. The contention is that it erred in applying state law rather than federal law as controlling. We take the view that the government is correct in its contention. * * "

The Court, after referring to the fact that the government makes use of state recording laws and state definitions as to mortgages and uses different forms of mortgages for each state, went on to state (at page 383):

> "A different set of factors come into play when the planning stage and the working stages of the agreement have been terminated. After a default the sole situation presented is one of remedies. Commercial convenience in utilizing local forms and recording devices familiar to the community is no longer a significant factor. Now the federal policy to protect the treasury and to promote the security of federal investment * * * becomes predominant. *Local rules limiting the effectiveness of the remedies available to the United States for breach of a federal duty can not be adopted.*" (Emphasis supplied.)

The present case is a nondiversity case. In the case just referred to, the Court held that federal law was applicable and that such law would be the law generally followed by the courts. The Court remanded the case to the trial court to determine as a matter of federal law whether the facts warranted the appointment of a receiver. Upon remand, the trial court determined that under the federal law the appointment of a receiver was warranted and it appointed a receiver to manage the property and collect the rents during the pendency of the foreclosure. An appeal was taken from the decision of the trial court. On appeal that decision was affirmed. View Crest Garden Apts., Inc. v. United States, 9 Cir., 1960, 281 F.2d 844. The Court was of the view that the provision in the mortgage for a receiver was calculated to protect the treasury and promote the security of the federal investment. The Court stated that receivership was an equitable remedy. It was of the view that under the federal equity rules the United States was entitled to that remedy.

In the present case the mortgage of the defendant, United States of America, contained a provision pledging the rents from the mortgaged property. It also contained a provision providing for the appointment of a receiver. That provision was for the security of the investment. The defendant, United States of America, did make an application for the appointment of a receiver to protect its investment. It has asked that the net proceeds of the rentals be applied upon its deficiency judgment. The defendant, The Waterloo Savings Bank, did not make any request for the appointment of a receiver in connection with the foreclosure of its mortgage. It seeks to have the net proceeds of the rentals collected by the receiver appointed on the application of the defendant, United States of America, under the latter's mortgage applied upon the taxes paid by it. The claim of the defendant, The Waterloo Savings Bank, to have the net proceeds of the rentals applied on the taxes paid

by it is not based upon general principles of equity law but solely upon the provisions of Section 654.14. To apply all of the net rentals upon the claim of the defendant, The Waterloo Savings Bank, for taxes paid by it would be detrimental to the mortgage security interest of the defendant, United States of America. It would deprive that defendant of a means for the collection of its deficiency judgment which was provided for in its mortgage and which would usually be afforded to it by courts of equity. It would seem that under the general law and under the law of Iowa, prior to the enactment of Section 654.14 a court of equity would not deprive the defendant, United States of America, of its asserted right to have the proper proportionate share of the net rentals applied upon its deficiency judgment. It is the holding of the Court that the claim of the defendant, United States of America, to the net rentals is not subject to the restrictions of Section 654.14.

It was heretofore noted that the mortgage of the defendant, United States of America, included only the undivided one-half interest of the partnership in the tract and that the mortgage of the defendant, The Waterloo Savings Bank, included both interests in the tract. As between the defendant, The Waterloo Savings Bank, and the owner of the other unclaimed one-half interest in the tract, the provisions of Section 654.14 are applicable. As to whether the defendant, The Waterloo Savings Bank, might, as against such owner, apply one-half of the net rentals upon the taxes which were a lien against the tract at the time of the special execution sale might be subject to question. However, as heretofore noted, the defendant, The Waterloo Savings Bank, did pay the first half of the 1960 taxes against the tract in the amount of $1,839.75, which taxes were not due at the time of the special execution sale but became due during the year of redemption and during the pendency of the receivership. Those taxes were in excess of one-half of the net rentals. It is the holding of the

Court that under the provisions of Section 654.14 one-half of the net rentals should be paid to the defendant, The Waterloo Savings Bank, as a partial reimbursement for the first half of the 1960 taxes paid by it.

In a separate order the Court is making an allowance to Samuel T. Beatty for fees and expenses in the sum of $1,-027.79. That leaves a net balance in the receivership of $3,271.54.

It Is Hereby Ordered one-half of said net balance, or the sum of $1,635.77, be paid to the defendant, United States of America, to apply upon its deficiency judgment and that the other one-half, or the sum of $1,635.77, be paid to the defendant, The Waterloo Savings Bank, as a partial reimbursement for the first half of the 1960 taxes against the tract paid by it.