**UNITED STATES of America,**
**Appellant,**

v.

**E. H. KRAMEL and Orr Crum, Individually, and Bowles Livestock Commission Company, Appellees.**

**No. 15320.**

United States Court of Appeals
Eighth Circuit.

June 20, 1956.

**578**

Alan S. Rosenthal, Atty., Dept. of Justice, Washington, D. C., and Joseph L. Flynn, Asst. U. S. Atty., St. Joseph, Mo. (Warren E. Burger, Asst. Atty. Gen., Edward L. Scheufler, U. S. Atty., Kansas City, Mo., and Paul A. Sweeney and Sondra K. Slade, Attys., Dept. of Justice, Washington. D. C., were on the brief), for appellant.

John C. Gage and John B. Gage, Kansas City, Mo., for appellees.

Before STONE (retired), WOODROUGH, and VOGEL, Circuit Judges.

STONE, Circuit Judge.

This is an action by the Government against E. H. Kramel and Orr Crum, a partnership doing business as the Bowles Livestock Commission Company to recover for the conversion of a cow which they (as commission dealers) had sold on the livestock market at Kansas City, Missouri, at a time when the cow was included in a chattel mortgage held by the Farmers Home Administration, a governmental agency. Defendants' motion to dismiss because the petition stated no cause of action was sustained, and the Government appeals.

The petition sets forth parts of the chattel mortgage (made by two parties named Williams) which show inclusion of the cow and a provision that " * * the mortgagor, will not sell, remove or encumber the property hereby mortgaged or suffer others to do so without the written consent of the mortgagee"; also, the shipment of the cow by the mortgagors to defendants for sale without the knowledge or consent of the mortgagee and the sale thereof on the market at Kansas City, Missouri. The prayer is for the reasonable value (here sales value) with interest.

The legal basis for the motion to dismiss is that conversion vel non depends upon the law of Missouri (where all transactions involving defendants took place); and that such law holds defendants not here liable because defendants were a market agency and the petitioner does not allege that they had any actual knowledge of the mortgage at the time of sale.

This court has recently held that the State law governs in a situation like this, Sig Ellingson & Co. v. De Vries, 8 Cir., 199 F.2d 677 and Sig Ellingson & Co. v. Butenbach, 8 Cir., 199 F.2d 679, certiorari denied in both cases 344 U.S. 934,

73 S.Ct. 505, 97 L.Ed. 719; and such is the holding of other courts.[1]

The applicable law of Missouri is clearly stated in Blackwell v. Laird (Kansas City Court of Appeals), 236 Mo.App. 1217, 163 S.W.2d 91, followed in Cresswell v. Leftridge (Springfield Court of Appeals), 194 S.W.2d 48. In the Blackwell case, stolen cattle had been sold to a local livestock dealer who consigned them to a commission firm at the Kansas City Stockyards for sale. Without any knowledge of any defect in title of its consignor and with no negligence in that respect on its part, the commission company sold the cattle in the usual course of business at the yards and (still without knowledge of the defective title) remitted the net proceeds to the consignor. Thereafter, the rightful owner brought an action for conversion against the commission firm.

■ The Kansas City Court of Appeals, Blackwell v. Laird, 236 Mo.App. 1217, 163 S.W.2d 91, 93, determined that the Kansas City Stockyard is a "public utility"[2] within the Packers and Stockyards Act; that possession of personal property is "prima facie evidence of ownership" under Missouri law (citing cases); that the Act requires "market agencies" (such as defendants there) "to furnish upon reasonable request, without discrimination, reasonable stockyard services at such stockyard" 7 U.S.C.A. § 205; and (recognizing that there are contrary decisions in the courts of other States) that the commission firm was not liable for conversion. The Court sums up its conclusions as follows, 163 S.W.2d at page 94:

"We prefer to follow the line of decisions which hold in effect that a public utility which is required by law to render specific services to the public without discrimination, should not be considered in the same category with those who may or may not transport, store, or sell property at the request of one in possession thereof. In this case, the respondents performed the act which they were required to perform, to wit: the selling of the cattle for a commission, and exercised no other dominion or control over the property other than that."

To the same effect is Cresswell v. Leftridge, (Springfield Mo.App.) 194 S.W.2d 48 which quotes from the Blackwell case with approval.

Appellant does not challenge that the law of Missouri is as above stated. Its position is (1) that the Missouri law does not apply. It contends (2) that "the rights of the United States in this case are governed by federal law * * *"; and (3) that the "Federal policy as announced in 18 U.S.C. § 658 designed to protect the Farmers Home Administration from conversion of mortgage security requires that appellees be held liable in conversion." The argument of the Government is presented in an excellent brief which evidences much consideration and investigation of the law as to the issues just stated.

The first issue is the contention that the rule in Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 822, 82 L.Ed. 1188 does not apply. The second issue is that federal law and not Missouri law applies (a) because the Government, through the Farmers Home Administration, 7 U.S.C.A., has embarked upon a nation-wide program of farm assistance which requires uniformity in administration; and (b) because the "general common law" provides for recovery under the circumstances here and the Packers and Stockyards Act provides no exception to the general rule.

1. John Clay & Co. Livestock Commission v. Clements, 5 Cir., 214 F.2d 803, 807; Walker v. Caviness, Tex.Civ.App., 256 S.W.2d 880, 882; Annotation, 2 A.L.R.2d 1124.

2. Citing Tagg Bros. & Moorhead v. United States, 280 U.S. 420, 50 S.Ct. 220, 74 L.Ed. 524; Morgan v. United States, 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288; and Stafford v. Wallace, 258 U.S. 495, 42 S.Ct. 397, 66 L.Ed. 735.

The third contention is that Section 658 of Title 18 U.S.C.A. indicates a clear congressional policy to protect the Administration from non-intentional (non-criminal) conversions of its mortgage collateral.

1. *The Erie Case.* We agree with counsel for appellant that the case of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, does not apply. Broadly, that case is limited to instances where federal jurisdiction is based upon diversity of citizenship.[3] This is not a diversity case. It is a case brought by the United States to enforce its alleged rights under an Act of Congress in a general field where the United States had constitutional power to legislate.

However, this concession does not solve our problem because "In our choice of the applicable federal rule we have occasionally selected state law". Clearfield Trust Co. v. United States, 318 U.S. 363, 367, 63 S.Ct. 573, 575, 87 L.Ed. 838; and see United States v. Standard Oil Co. of California, 332 U.S. 301, 308, 67 S.Ct. 1604, 91 L.Ed. 2067 and Royal Indemnity Co. v. United States, 313 U.S. 289, 297, 61 S.Ct. 995, 85 L.Ed. 1361.

2. *Applicability of United States Law.* The very nature of the matter has prevented the Supreme Court from trying any rigid statement as to when and how this "choice" is to be exercised. It is a matter of inclusion or exclusion governed by the intent (express or implied) of Congress as suited to the situation in the particular case. Probably, the nearest general definition is that by Mr. Justice Rutledge, in United States v. Standard Oil Co. of California, 332 U.S. at page 309, 67 S.Ct. at page 1609:

"But we do not undertake to delimit or categorize the instances where it is properly to be applied outside the Erie aegis. It is enough for present purposes to point out that they exist, cover a variety of situations, and generally involve matters in which application of local law not only affords a convenient and fair mode of disposition, but also is either inescapable, as in the illustration given above, or does not result in substantially diversified treatment where uniformity is indicated as more appropriate, in view of the nature of the subject matter and the specific issues affecting the Government's interest."

(2a) The Government contends that, by the Farmers Home Administration Act, 7 U.S.C.A., it "entered into nationwide transactions requiring uniform administration." In many respects this claim is sound, but is that requirement broad enough to avoid entirely all application of State law to every and all situations and contingencies? Setting to one side the question of constitutional power, is this Act to be construed as displacing State law governing or affecting titles to property and tort actions for claimed violation of property rights?

We have searched through this entire Act to ascertain whether expressly or by fair implication any such broad purpose is indicated therein. Clearly, there is no direct expression to be found. Nor is there any such intention implied. Broadly, this legislation gives aid to designated classes of farmers by providing or insuring loans on farm lands and upon certain chattels connected with farming operations—including livestock. The "terms" or provisions of the mortgage, § 1003, are set forth in some detail but none of them suggest any derogation of

3. In United States v. Standard Oil Co. of California, 332 U.S. 301, 307, 67 S.Ct. 1604, 1608, is stated: "The great object of the Erie case was to secure in the federal courts, in diversity cases, the application of the same substantive law as would control if the suit were brought in the courts of the state where the federal court sits. It was the so-called 'federal common law' utilized as a substitute for state power, to create and enforce legal relationships in the area set apart in our scheme for state rather than for federal control, that the Erie decision threw out. Its object and effect were thus to bring federal judicial power under subjection to state authority in matters essentially of local interest and state control."

State law affecting title to the mortgaged land or personal property. The remedies of the Government for violation of the terms of the mortgage simply amount to forfeiture with right of foreclosure.

This legislation was general in its intention to make or to insure loans in all States. Congress must have known that State laws affecting or protecting titles and their attributes—such as possession for example—are not identical in all of the States. Yet this legislation omitted any reference to this inevitable situation. From this omission we must conclude that here Congress did not deem that the complete uniformity now urged by the Government was necessary to effectuate the purposes it intended to accomplish by the Act. Compare Reconstruction Finance Corporation v. Beaver County, Pa., 328 U.S. 204, 209–210, 66 S.Ct. 992, 90 L.Ed. 1172.

■ The present action is one in tort, for conversion of a chattel covered by the mortgage. Does this form of action affect the matter of uniformity of administration of this Act so as to manifest a congressional intention to remove it from the control of State law? While trover is a tort proceeding, yet it is an action which is based upon and solely for the protection of a cardinal element of property—possession. It is an unlawful appropriation of personal property to the legal damage of the rightful possessor. We think this character of action cannot be presumed or construed to be within the purview of this legislation as a matter to be governed by it. There is no element of harmonious administration of the Act involved therein. Such remedies are much the same in the different States but this very litigation is illustrative of the existence of differences. There should be substantial, if not compelling, reasons to warrant construction of an Act of Congress as replacing State tort

laws affecting property rights. We see none such here.

■ What we have hereinbefore stated disposes of the contentions that the federal and not the State law prevails because the Farmers Home Administration Act requires uniformity of administration in situations such as here presented.

(2b) The so-called "general common law" contention is also obviously so included. This is true because such "common law" is not present where State law prevails. Also, such property rights as here involved, are held, by this Court and other courts, to be determined by the State law. While such courts have reached different conclusions on other related matters, there has been no disagreement as to this.[4]

3. *Section 658.* Section 658 Title 18 U.S.C.A. makes it a crime where "whoever, with intent to defraud, knowingly conceals, removes, disposes of, or converts to his own use or to that of another, any property mortgaged or pledged to, or held by," any farm credit agency in an expressed list thereof, which includes the "Secretary of Agriculture acting through the Farmers' Home Administration."

From the position that Congress has thus imposed this criminal sanction against one who "knowingly" converts property thus mortgaged to the United States, appellant contends that there is indicated a clear congressional policy to protect also against "non-intentional or non-criminal conversions of its collateral and from the resulting loss of public money;" and that "the legal consequences of this statutory condemnation" are federal and not State law questions, which must be resolved in the light of the federal policy announced in section 658. Appellant urges, as direct supporting authority, Deitrick v. Greaney, 309 U.S. 190, 60 S.Ct. 480, 84 L.Ed. 694 and

**4.** Sig Ellingson & Co. v. De Vries, 8 Cir., 199 F.2d 677, certiorari denied 344 U.S. 934, 73 S.Ct. 505, 97 L.Ed. 719; John Clay & Co. Livestock Commission v. Clements, 5 Cir., 214 F.2d 803, 806; Birmingham v. Rice Brothers, 238 Iowa 410, 26 N.W.2d 39, 2 A.L.R.2d 1108 (with annotations page 1124). Also see Houfburg v. Kansas City Stock Yards Co. of Maine, Mo., 283 S.W.2d 539.

582

D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp., 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956.

The Deitrick case was an instance of National Bank officials deliberately violating that Act by a deceptive ownership of its stock through a straw man. The suit was by the Comptroller to recover on a note, given for the stock, and for assessments against the stock. The main part of the opinion is devoted to showing that the policy of the National Banking Act—as revealed by its express provisions—is to protect the assets and business methods of such bank for the benefit of those who deal with it.

One point 309 U.S. at page 200, 60 S. Ct. at page 485, pressed was whether State law precluded the defense of the illegality of the transaction. The Court stated:

"A point much discussed in brief and argument, upon the assumption that local law will guide our decision, see Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, is whether, by Massachusetts law respondent is precluded from setting up the illegality of the transaction as a defense to his note. But it is the federal statute which condemns as unlawful respondent's acts. The extent and nature of the legal consequences of this condemnation though left by the statute to judicial determination, are nevertheless to be derived from it and the federal policy which it has adopted, see, Board of Commissioners of Jackson County, Kan. v. United States, 308 U.S. 343, 60 S.Ct. 285, 84 L.Ed. 313, and cases cited. We have recently held that the judicial determination of the legal consequences which flow from acts condemned as unlawful by the National Bank Act involves decision of a federal, not a state question. Awotin v. Atlas Exchange National Bank, supra [295 U. S. 209, 55 S.Ct. 674, 79 L.Ed. 1393]."

The D'Oench case was a suit against an accommodation endorser by the Federal Deposit Insurance Corporation on a note—part of assets acquired by the Corporation as collateral to a loan by it to a State bank.

The main point of controversy, 315 U. S. at page 455, 62 S.Ct. at page 678, was whether the Missouri conflict of laws' rule should have been applied as the law of the forum. Held: "the liability of petitioner on the note involves decision of a federal not a state question under the rule of Deitrick v. Greaney, 309 U.S. 190, 60 S.Ct. 480, 84 L.Ed. 694." 315 U.S. at page 456, 62 S.Ct. at page 679. The Court examines and concludes that the provisions of the Federal Reserve Act "reveal a federal policy to protect * * * the public funds which it administers against misrepresentations as to the securities or other assets in the portfolios of the banks which respondent insures or to which it makes loans." 315 U.S. at page 457, 62 S.Ct. at page 679. The misrepresentation here was that an apparent endorser was, through a secret agreement, to be only as accommodation endorser.

In both the Deitrick and the D'Oench cases there were either direct expressions in the particular Act involved or clear intimations that Congress intended uniformity of administration of the respective act under federal control instead of use of State law.

Of course, section 658 states a clear intention to protect the collateral given the Farmers Home Administration from *conscious fraud*. However, this does not go so far as to evince a public federal policy to replace State laws which control title either to real or personal property. Nor does any provision of that Act have such an effect. Laying aside any question of constitutional power on the part of the United States so to affect property titles, it would require a very clearly expressed intent so to invade a field of control which has always been

regarded as peculiarly belonging to the States exclusively.[5]

The judgment here appealed must be and is

Affirmed.

5. See Curry v. McCanless, 307 U.S. 357, 363–365, 59 S.Ct. 900, 83 L.Ed. 1339; and numerous citations in 11 Am.Juris, p. 352 footnote 16. Also compare United States v. Burnison, 339 U.S. 87, 70 S.Ct. 503, 94 L.Ed. 675; R. F. C. v. Beaver County, 328 U.S. 204, 205, 66 S.Ct. 992, 90 L.Ed. 1172; Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465; Poe v. Seaborn, 282 U.S. 101, 51 S.Ct. 58, 75 L.Ed. 239; Uterhart v. United States, 240 U.S. 598, 36 S.Ct. 417, 60 L. Ed. 819; United States v. Fox, 94 U.S. 315, 24 L.Ed. 192.