**UNITED STATES of America,**
**Appellant,**

**v.**

**CHESTER PARK APARTMENTS, INC.,**
**Appellee.**

**No. 17630.**

United States Court of Appeals
Eighth Circuit.

May 28, 1964.
Rehearing Denied June 23, 1964.

**2**

Stephen B. Swartz, Attorney, Department of Justice, Washington, D. C., John W. Douglas, Asst. Atty. Gen., Washington, D. C., Alan S. Rosenthal, Attorney, Dept. of Justice, Washington, D. C., and Miles W. Lord, U. S. Atty., Minneapolis, Minn., for appellant.

Frank Hammond, St. Paul, Minn., Richard H. Kyle and D. D. Wozniak, St. Paul, Minn., for appellee.

Before VOGEL, MATTHES and RIDGE, Circuit Judges.

MATTHES, Circuit Judge.

The Government instituted an action on November 19, 1963, in the United States District Court, District of Minnesota, for the use, benefit and credit of the Federal Housing Commissioner, seeking certain relief, including the foreclosure of a mortgage on real estate, of a chattel mortgage on personal property, and the appointment of a receiver to take charge and possession of the encumbered property during the pendency of the action. On December 17, 1963, the Government filed an application for appointment of a receiver to take charge of the mortgaged real estate pending the outcome of the foreclosure action. Following a hearing, the court, by order dated March 19, 1964, denied the application for appointment of a receiver. Upon proper certification by the trial court, and pursuant to 28 U.S.C.A. § 1292

(b), we permitted the Government to appeal from this interlocutory order.

The background facts are disclosed by the complaint, exhibits forming a part thereof, and the answer thereto.

On July 1, 1950, Chester Park Apartments, Inc. (appellee) executed its mortgage note in the sum of $1,328,400 payable to Manufacturers Hanover Trust Company of New York, or its order. To secure payment of the note, appellee executed on the same date its mortgage upon real estate in Ramsey County, Minnesota, and as additional security, on March 15, 1952, appellee executed its chattel mortgage on certain personal property. On July 24, 1950, the loan evidenced by the note was insured by the Federal Housing Commissioner pursuant to the provisions of § 608 of Title VI of the National Housing Act as amended, Title 12 U.S.C.A. § 1743.

The complaint alleged and the answer denied that the note and security instruments were in default by reason of the failure of appellee to make installment payment due November 1, 1962, in accordance with the terms of the note; that Manufacturers Hanover Trust Company had exercised its option under the terms of its insurance contract with the Federal Housing Administration, and on September 25, 1963, assigned the note and security instruments to the Federal Housing Commissioner. The complaint further alleged that appellee was indebted to the Government in the following amounts:

"(a) $1,103,994.80 as the unpaid principal balance due and payable as of November 1, 1963;

"(b) $5,235.48 as unpaid interest on the said principal balance at 4% per annum accrued from the due date of the last payment made to Mortgage principal through October 31, 1963;

"(c) Interest on said principal balance at 4% per annum from November 1, 1963, until paid;

"(d) $3,455.91 as net advances for taxes;

"(e) $5.30 as unpaid interest on the said advances at 4% per annum through October 31, 1963;

"(f) Interest on said advances for taxes from November 1, 1963, until paid."

The Government premised its application for appointment of a receiver upon the mortgage, which provides in pertinent part:

"That the holder of this mortgage, in any action to foreclose, shall be entitled to the appointment of a Receiver of the rents and profits of the mortgaged premises as a matter of right and without notice, with power to collect the rents, issues and profits of said mortgaged premises, due and becoming due during the pendency of such foreclosure suit, such rents and profits being hereby expressly assigned and pledged as additional security for the payment of the indebtedness secured by this mortgage, without regard to the value of the mortgaged premises or the solvency of any person or persons liable for the payment of the mortgage indebtedness. The Mortgagor for itself and any subsequent owner hereby waives any and all defenses to the application for a Receiver as above and hereby specifically consents to such appointment without notice, but nothing herein contained is to be construed to deprive the holder of the mortgage of any other right, remedy or privilege it may now have under the law to have a Receiver appointed. The provision for the appointment of a Receiver of the rents and profits and the assignment of such rents and profits is made an express condition upon which the loan hereby secured is made."

Appellee opposed the granting of interim relief and the appointment of a receiver, persuaded the trial court to hold that resolution of the question depended upon local law, that the mortgage provision relied upon by the Government was unenforceable under Minnesota law, and to hold that "even though the De-fendant is in some default, the Plaintiff is not entitled to a receiver."

The Government concedes that under Minnesota law the mortgage provision would be unenforceable. Thus, it becomes apparent that the issue before us is whether federal or state law controls the enforceability of the agreement providing for the appointment of a receiver to collect rents during the pendency of the foregoing proceedings.

Initially, we look to federal law to ascertain the source of the law controlling the relation between the United States and the parties to the mortgage. Clearfield Trust Co. v. United States, 318 U.S. 363, 366–367, 63 S.Ct. 573, 87 L.Ed. 838 (1943); United States v. Allegheny County, 322 U.S. 174, 183, 64 S.Ct. 908, 88 L.Ed. 1209 (1944); United States v. Kramel, 8 Cir., 234 F.2d 577, 580 (1956); United States v. View Crest Garden Apts., Inc., 9 Cir., 268 F.2d 380, 382 (1959), cert. denied, 361 U.S. 884, 80 S.Ct. 156, 4 L.Ed.2d 120 (1959). Thus, if Minnesota law is to be applied in the matter of appointing a receiver in this foreclosure proceeding, it is because Congress or the federal courts have adopted local law in the furtherance of federal policy and not because of the force of the Minnesota law itself. As enunciated in the cases, supra, inasmuch as this action arises under federal law, and jurisdiction does not depend upon diversity of citizenship, the rule of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), is inapplicable. However, state law is sometimes adopted to fulfill the federal policies involved. Clearfield Trust Co. v. United States, supra, 318 U.S. at 367, 63 S.Ct. 573.

In refusing to appoint a receiver, the trial court was motivated by our decision in United States v. Kramel, supra, 234 F.2d 577, and held that the teachings of that case required the application of state law here. Because of vital factual differences, we conclude Kramel is not controlling. Kramel was an action for alleged conversion resulting from sale by a livestock commission company of an animal on which the Farmers Home Ad-

ministration held a lien under a chattel mortgage. The case turned upon the efficacy of the lien as to a public livestock dealer who had no actual notice of the existence of the chattel mortgage. Thus, the key issue centered upon control of title to property—"a field of control which has always been regarded as peculiarly belonging to the States exclusively." 234 F.2d at 582–583. Here, the appointment of a receiver during the pendency of the foreclosure action does not affect the title to the premises—such action does not go to the validity of the lien of the mortgage, but rather, it is a part and parcel of the remedy which arises only in default of the loan.

Although a contention urged by the Government in Kramel was focused upon the enforcement of rights of the Government under laws made on a nation-wide basis and in that regard Kramel is akin to the instant situation, nevertheless, as we recognized in United States v. McCabe Company, 8 Cir., 261 F.2d 539, 544 (1958), which involved another federal program, "Kramel does not hold that under all circumstances federal rights must be determined upon the basis of state law."

The precise question presented herein was the subject of litigation in United States v. View Crest Garden Apts., Inc., supra, 268 F.2d 380. There, like here, the district court held that state law [Washington] applied and that under such law appointment of a receiver was not warranted. The court of appeals reasoned that federal law controlled, and reversed and remanded for determination whether under federal law the facts warranted the appointment of a receiver.

█ No beneficial purpose will be served in re-enunciating the compelling reasons for holding, as did the Ninth Circuit, that federal law must be applied. What was said in that regard in View Crest, supra, 268 F.2d 380, is applicable here. As we recognized in McCabe, supra, 261 F.2d 539, the Supreme Court has consistently held that when the Government, acting pursuant to constitutional acts of Congress, enters into large scale transactions requiring uniform administration, "questions of rights and liabilities must be uniformly determined by federal law." 261 F.2d at 543, citing United States v. Standard Oil Company, 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947); United States v. Allegheny County, supra, 322 U.S. 174, 64 S.Ct. 908; Clearfield Trust Co. v. United States, supra, 318 U.S. 363, 63 S.Ct. 573.

Additionally, it appears that two district courts in this circuit have recognized that federal law is to be applied in the appointment of a receiver and the disposition of funds by the receiver. American National Insurance Company v. Smith, N.D.Iowa, 197 F.Supp. 479 (1961) (Judge Graven); United States v. Academy Apts., Inc., D.Minn., 230 F. Supp. 110 (1963) (Judge Nordbye). For cases which considered related questions, see also, United States v. Sylacauga Properties, Inc., 5 Cir., 323 F.2d 487, 491 (1963); United States v. Helz, 6 Cir., 314 F.2d 301, 303 (1963); Penagaricano v. Allen Corporation, 1 Cir., 267 F.2d 550, 558 (1959); American Houses, Inc. v. Schneider, 3 Cir., 211 F.2d 881, 882–883, 44 A.L.R.2d 1352 (1954).

Encompassed within its second point, the Government urges that "this Court should remand the case to the district court with directions to appoint a receiver forthwith." This request is premised upon the Government's assertion that a uniform federal rule is required where, as here, the Government—to protect its interest in a national program— seeks appointment of a receiver pursuant to the express terms of a mortgage, and that under such a rule—which has been promulgated—the Government is entitled as a matter of right to appointment of a receiver during the pendency of the foreclosure litigation. More precisely, the Government contends that once we have decided that federal law is controlling, our task is limited to enforcing the express terms of the mortgage agreement and that the enforceability of the provision for the appointment of a receiver is not dependent upon a showing of in-

sufficiency of security or insolvency of the mortgagor. In so contending, the Government relies primarily upon two Ninth Circuit cases—View Crest Garden Apartments, Inc. v. United States, 281 F. 2d 844, 82 A.L.R.2d 1067 (1960), cert. denied, 364 U.S. 902, 81 S.Ct. 235, 5 L. Ed.2d 195 (1960), and United States v. Queen's Court Apartments, Inc., 296 F. 2d 534 (1961)—both of which had also been before the Ninth Circuit in prior instances. See, respectively, supra, 268 F.2d 380; and 288 F.2d 253 (1961).

In opposition, appellee maintains that in View Crest, supra, 281 F.2d 844, the Ninth Circuit based its decision upon the district court's finding as to insolvency and insecurity, determined that as a matter of federal law *the facts of that case* warranted appointment of a receiver, but by no means held that the Government was entitled to the appointment of a receiver as a matter of right under the terms of the mortgage. As to the second Queen's Court opinion, supra, 296 F.2d 534, appellee asserts that "although it is true that there is no mention of the inadequacy of security, insolvency of the mortgagor, disrepair of the buildings, and unoccupancy of the buildings, it cannot be doubted that the same factors which led the Circuit Court to appoint a receiver [in the first Queen's Court case, supra, 288 F.2d 253] pending the appeal were present and dictated the appointment of a receiver pending foreclosure."

In its reply brief, the Government vigorously opposes appellee's interpretation of the Queen's Court cases, discounting the relevancy of the findings in the first Queen's Court case on the basis that "the receivership requested and granted in that preliminary proceeding was merely a temporary one" pending appeal, and did not involve the pendency of foreclosure proceedings. The Government

contends that the second Queen's Court case is more akin to the case before us, and notes that there, "the Ninth Circuit neither made findings regarding the current adequacy of the mortgage security or the current financial status of the mortgagor, nor directed the district court to do so before appointing a receiver."

We need not here decide whether the second Queen's Court holding stands for the proposition that under federal law the Government is entitled—in all instances—to the appointment of a receiver according to the terms of the mortgage provision as a matter of right, without need for further findings. Nor, need we establish an iron-clad rule demanding, ipso facto without additional determination, appointment of a receiver pursuant to a mortgage provision such as the one before us. However, taking cognizance of the entire record and the factual background, including the circumstance that in the past the Federal Housing Commissioner, to protect the interest of the Government, assumed temporary control and management of the mortgaged premises, and including the admission that appellee has failed to make payments on the mortgage since July 1, 1963, we do hold that here the Government is entitled to have a receiver appointed during the pendency of the foreclosure proceeding.[1]

Accordingly, we reverse and remand to the district court with directions to appoint a receiver forthwith, "with power to collect the rents, issues and profits of said mortgaged premises, due and becoming due during the pendency of such foreclosure suit" in accordance with the mortgage agreement, to pay the necessary expenses therefrom, and to otherwise make disbursements, all under the orders and supervision of the district court.

Mandate to be issued forthwith.

---

[1]. In oral argument counsel for appellee advised that appellee has not made monthly payments on the loan of approximately $6,700 each, since July, 1963, although, according to counsel, appellee has been collecting approximately $8,000 per month as rents. It appears from counsel's statement that a dispute exists in regard to application of amounts held in reserve to amounts due on the loan. In any event, implicit in the district court's order denying appointment of a receiver is the finding that appellee is in default.