**UNITED STATES of America,**
**Appellant,**

v.

**CHAPPELL LIVESTOCK AUCTION,**
**INC., Appellee.**

**No. 74–1618.**

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 14, 1975.

Decided April 29, 1975.

On Rehearing En Banc Sept. 29, 1975.

William K. Schaphorst, U. S. Atty.; Daniel E. Wherry, Asst. U. S. Atty., Lincoln, Neb. and Roger L. Sherman, Atty., U. S. Dept. of Agriculture, Shawnee Mission, Kan., for appellant.

Cline, Williams, Wright, Johnson & Oldfather, Lincoln, Neb., for appellee.

Before HEANEY and WEBSTER, Circuit Judges, and NANGLE,* District Judge.

HEANEY, Circuit Judge.

This case was submitted to the District Court on stipulated facts. The United States loaned money to farmers through the Farmers Home Administration, taking a security interest in cattle. Financing statements were duly filed. Defendant auctioneer sold five head of encumbered cattle on behalf of the farmers, and the United States sued the auctioneer for common law conversion. The auctioneer defended on the basis of Rev.

---

* John F. Nangle, District Judge, Eastern District of Missouri, sitting by designation.

Stat. Nebraska § 69.109.01.[1] That statute exempts an auctioneer from liability when he has no actual knowledge of the security interest and acts in good faith. The parties stipulated that the auctioneer had complied with the terms of the Nebraska statute, and could not be held liable if state law controlled. Under federal common law, however, the auctioneer would be strictly liable in conversion.

The District Court granted summary judgment for the defendant. It relied on United States v. Kramel, 234 F.2d 577 (8th Cir. 1956), where we held that whether an auctioneer had converted collateral secured under the Farmers Home Administration loan program was to be determined by resort to state law.

The government asks us to reverse the District Court because: (1) our rule in Kramel was improvidently adopted and should be overruled; or (2) the facts of this case are distinguishable from those in Kramel. We reject both contentions and affirm.

## I.

■ The government urges this Court to reconsider the Kramel decision because five Circuits have adopted a contrary rule whereby, notwithstanding state law, an auctioneer is strictly liable in conversion under federal common law. See United States v. Hext, 444 F.2d 804 (5th Cir. 1971); Cassidy Commission Co. v. United States, 387 F.2d 875 (10th Cir. 1967); United States v. Carson, 372 F.2d 429 (6th Cir. 1967); United States v. Sommerville, 324 F.2d 712 (3rd Cir. 1963), cert. denied, 376 U.S. 909, 84 S.Ct. 663, 11 L.Ed.2d 608 (1964); United States v. Matthews, 244 F.2d 626 (9th Cir. 1957).

While recognizing the fact that Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct.

817, 82 L.Ed. 1188 (1938), does not apply to actions to enforce rights of the United States acting under its constitutional powers, we noted in Kramel that, in framing the applicable federal rule, the courts occasionally resort to state law. United States v. Kramel, supra at 580, citing Clearfield Trust Co. v. United States, 318 U.S. 363, 367, 63 S.Ct. 573, 87 L.Ed. 838 (1943). On the issue of the auctioneer's conversion, we chose to apply state law, noting that: (1) to permit federal common law to control would require the displacement of state tort law affecting title to personal property, an issue traditionally left to the states; and (2) Congress, in enacting the Farmers Home Administration Act, did not indicate that uniformity was needed, for no intention to override state law was expressed, even though it must have been aware that laws affecting or protecting title are not identical in all states. We believe this reasoning is still valid. Moreover, in adopting a similar rule in United States v. Union Livestock Sales Co., 298 F.2d 755 (4th Cir. 1962), the Fourth Circuit noted three additional reasons which we find persuasive: (1) there is no need in fact for uniformity in Farmers Home Administration loan transactions throughout the United States; (2) the procedure adopted by government regulations requires the chattel mortgage to be filed or recorded in accordance with local recording laws; and (3) the general purpose of the statute to give aid and assistance to the farming community will be promoted if the loans are made in accordance with local practice.

We find nothing in the Supreme Court decisions cited by the government which indicates to us that our original conclusion was erroneous. The rule laid down in Kramel is supported by the Supreme Court's opinion in United States v. Ya-

---

1. The statute provides:

 * * * The auctioneer, who in good faith and without notice of a security interest therein, sells personal property at auction, which is in fact subject to a security interest, for a principal whose identity has been disclosed, in which property the auctioneer has no interest but acts only as an intermediary of the owner is not liable to the holder of the security interest for any damage sustained as a result of such sale.

zell, 382 U.S. 341, 86 S.Ct. 500, 15 L.Ed.2d 404 (1966). It has not been weakened or modified by subsequent decisions of this Court.[2]

## II.

■ The government urges that *Kramel* is not broad enough to call for the application of the Nebraska statute here. It would have us construe that statute to take away only the *remedy*, and not to redefine the tort of conversion.[3] Therefore, it contends, this case is governed by United States v. McCabe Co., 261 F.2d 539 (8th Cir. 1959).

In *McCabe*, the defendant, an insolvent warehouseman, did not deny that he was guilty of conversion of encumbered grain, but defended solely on the ground that he could not be sued by the United States because a state statute had given to the state public service commission the exclusive right to sue insolvent warehousemen. We held that state law could not take away from the United States a cause of action for a wrong which the state continued to recognize as a wrong. In short, the state could not withhold only the remedy.

We cannot agree with the government's reading of the Nebraska statute[4] or that the *McCabe* decision is applicable. We read the statute simply to define the circumstances under which an auctioneer commits the tort of conversion. The government's argument that the statute acts solely to withhold the remedy from an otherwise recognized tort is an unacceptable exercise in semantics. When the statute took away everyone's right to sue the auctioneer, the tort was extinguished. In providing that there is no conversion under the facts of this case, the effect of the statute is no different than that of the state common law rule applied in *Kramel*.

2. We cannot agree with the dissent that our opinions in United States v. Thompson, 438 F.2d 254 (8th Cir. 1971) and United States v. Chester Park Apartments, Inc., 332 F.2d 1 (8th Cir.), cert. denied, 379 U.S. 901, 85 S.Ct. 191, 13 L.Ed.2d 176 (1964), have undermined the holding of *Kramel.* Each of those cases dealt with procedural baggage accompanying the Federal Housing Administration's mortgage foreclosure remedy against parties who had contracted with the government. In *Thompson,* we held only that the court could specify cash terms at the judicial sale, despite a state statute requiring a three to six month extension of credit. We specifically noted that "[w]e are concerned only with the details in the manner in which a real estate mortgage need be foreclosed." United States v. Thompson, *supra* at 257–58. In *Chester Park*, we held only that the government was entitled to have a receiver appointed in accordance with the explicit terms of the mortgage. In so holding, we expressly distinguished our holding in *Kramel.* United States v. Chester Park Apartments, *supra* at 3–4.

*Thompson* and *Chester Park* are distinguishable from *Kramel* in two respects. First, the application of federal law in those cases affected only the interests of parties who had contracted with the government. Here, on the contrary, the government is attempting to recover from a third party who played no part in the contract. Second, the decision to permit federal law to override state law in *Thompson*
and *Chester Park* left the state law and its attendant policies unimpaired in the bulk of transactions not involving the federal government. On the other hand, to carve out an exception from state law protection whenever an auctioneer handles cattle which is subject to a federal lien would emasculate the state's policy of furthering the quick flow of commerce in livestock. Although the rule which the government urges would leave the auctioneer liable in conversion only in those few instances in which the government is a secured party, as a practical matter, the auctioneer would be required to check the recording system before every livestock sale, to fully protect himself.

3. The government correctly points out that, in *Kramel*, the federal and state common law were different, with only the former recognizing conversion. Here, by contrast, both the common law of the United States and of Nebraska would recognize strict liability in conversion. *See* State Securities Co. v. Svoboda, 172 Neb. 526, 110 N.W.2d 109 (1961). The statute, of course, altered Nebraska's common law.

4. The only Nebraska case we have found construing this statute did not face this issue and provides no guidance. *See* State Securities Co. v. Norfolk Livestock Sales Co., 187 Neb. 446, 191 N.W.2d 614 (1971).

Since we decline to overrule our holding in *Kramel*, the grant of summary judgment on the ground that state law prohibited the conversion action against the defendant under the stipulated facts is affirmed.

WEBSTER, Circuit Judge (dissenting).

I must respectfully dissent. It is my view that United States v. Kramel, 234 F.2d 577 (8th Cir. 1956), has been correctly undermined by more recent opinions of this court which place reliance upon cases from other circuits adhering to the prevailing view that federal, not state, law is to be applied in determining the remedies available to the United States for breach of a federal duty.[1]

In determining whether federal or state law should be applied in litigation arising out of a defaulted FHA mortgage our court recently observed:

The rule governing this case is that while state law will be followed to determine what security interests the Government obtains in its financial transactions in nationwide programs, federal law will be applied to determine what remedies are available to the Government to enforce its security interest.

United States v. Thompson, 438 F.2d 254, 256–57 (8th Cir. 1971), citing United States v. Stadium Apartments, Inc., 425 F.2d 358 (9th Cir.) cert. denied, 400 U.S. 926, 91 S.Ct. 187, 27 L.Ed.2d 185 (1970); *see* United States v. Chester Park Apartments, Inc., 332 F.2d 1, 4 (8th Cir.), cert. denied, 379 U.S. 901, 85 S.Ct. 191, 13 L.Ed.2d 176 (1964). *See also* United States v. McCabe Co., 261 F.2d 539 (8th Cir. 1959).

In the *Stadium Apartments* case, *supra*, the Ninth Circuit considered an action by the government to protect its interest in a defaulted FHA mortgage and said:

[There is a] federal policy to protect the treasury and to promote the security of federal investment which in turn promotes the prime purpose of the [FHA] Act—to facilitate the building of homes by the use of federal credit—[which] becomes predominant. *Local rules limiting the effectiveness of the remedies available to the United States for breach of a federal duty can not be adopted.*

425 F.2d at 363, *quoting* United States v. View Crest Garden Apartments, Inc., 268 F.2d 380, 383 (9th Cir.), cert. denied, 361 U.S. 884, 80 S.Ct. 156, 4 L.Ed.2d 120 (1959).

Thus in terms of property interests, the *nature* of an interest in property acquired by the government is determined under state law. It takes property subject to preexisting liens determined in accordance with state law. If the government undertakes to perfect a security interest, that interest is tested against the recording and filing requirements of the state where the property is located.

On the other hand, once an interest has been acquired by the government, the power to assert a *claim for any injury* to that property which is recognized under federal law may not be abridged

---

1. The court in *Kramel* erroneously assumed state law to be applicable absent a clear expression of congressional intent to the contrary. However, as Mr. Justice Jackson said in his concurring opinion in D'Oench Duhme & Co., Inc. v. FDIC, 315 U.S. 447, 471, 62 S.Ct. 676, 686, 86 L.Ed. 956 (1942):

A federal court sitting in a nondiversity case such as this does not sit as a local tribunal. In some cases it may see fit for special reasons to give the law of a particular state highly persuasive or even controlling effect, but in the last analysis its decision turns upon the law of the United States, not that of any state.

*Accord*, United States v. Standard Oil Co., 332 U.S. 301, 305, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947); *see* Clearfield Trust Co. v. United States, 318 U.S. 363, 366–67, 63 S.Ct. 573, 87 L.Ed. 838 (1943).

Similarly, the Court in United States v. Yazell, 382 U.S. 341, 356, 86 S.Ct. 500, 509, 15 L.Ed.2d 404 (1966), noted that "[g]enerally, in the cases applying state law to limit or condition the enforcement of a federal right, the Court has insisted that the state law is being 'adopted' as the federal rule."

or limited by state statute or decision, absent some clear manifestation of a federal legislative intent to do so.

This principle, which we applied in *Thompson, supra,* has been applied by five other circuits to reach a result different than that reached by this court in *Kramel.* In these cases, state law defenses of good faith or absence of knowledge have been rejected as against federal claims based upon wrongful conversion.[2]

Thus, in United States v. Hext, 444 F.2d 804 (5th Cir. 1971), the Fifth Circuit, relying upon Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943), found the need for uniformity in administering the vast Farmers Home Administration program sufficient to support the application of "federal law, to be fashioned by the federal courts according to general principles of commercial law." 444 F.2d 809. In so doing it noted that a state statutory defense had been specially enacted to protect warehousemen from such conversion claims.

The Sixth Circuit had earlier reached the same conclusion in United States v. Carson, 372 F.2d 429 (6th Cir. 1967). While it recognized that the federal courts may, in fashioning a federal rule, choose in appropriate cases to apply state law even though the federal policy of protecting the treasury and promoting the security of federal investments may be involved, the court nevertheless found state law inappropriate and held a uniform federal rule to be "the more appropriate alternative." 372 F.2d at 432. In so doing it rejected *Kramel* and followed similar holdings by the Third and Ninth Circuits in United States v. Sommerville, 324 F.2d 712 (3d Cir. 1963), cert. denied, 376 U.S. 909, 84 S.Ct. 663, 11 L.Ed.2d 608 (1964), and United States v. Matthews, 244 F.2d 626 (9th Cir. 1957).[3]

I conclude that the policy considerations expressed in these cases, as well as the principles applied in our more recent holdings, *see* United States v. Thompson, *supra,*[4] warrant our formal repudiation of *Kramel* rather than adherence to a concept which will continue to divide the circuits and subject enforcement of federal rights under a national program to a wide range of state law defenses. Should Congress determine that the need

---

**2.** United States v. Hext, 444 F.2d 804 (5th Cir. 1971); Cassidy Commission Co. v. United States, 387 F.2d 875 (10th Cir. 1967); United States v. Carson, 372 F.2d 429 (6th Cir. 1967); United States v. Sommerville, 324 F.2d 712 (3d Cir. 1963), cert. denied, 376 U.S. 909, 84 S.Ct. 663, 11 L.Ed.2d 608 (1964); United States v. Matthews, 244 F.2d 626 (9th Cir. 1957).

In the 19 years since it was decided, only the Fourth Circuit, in United States v. Union Livestock Sales Co., 298 F.2d 755 (4th Cir. 1962), has followed *Kramel.* See note 4 *infra.*

**3.** United States v. Yazell, 382 U.S. 341, 86 S.Ct. 500, 15 L.Ed.2d 404 (1966), relied upon in the majority opinion, is not contrary to these cases. Texas at that time retained the ancient law of coverture, which provided that "a married woman could not bind her separate property unless she had first obtained a court decree removing her disability to contract." 382 U.S. at 342, 86 S.Ct. at 501. Under Texas law her note and chattel mortgage issued jointly with her husband to the Small Business Administration could not bind her separate property. In an enforcement action following default, the court applied the Texas law but limited its holding to the narrow facts with which it had been presented, noting:

(1) that the loan to Yazell was individually negotiated in painfully particularized detail, and (2) that it was negotiated with specific reference to Texas law * * *.

* * * * * *

[And] that the transaction was custom-tailored by officials of SBA located in Dallas and Lampasas, Texas, and undoubtedly familiar with Texas law.

* * * * * *

[And that] it must be emphasized that this was a custom-made, hand-tailored, specifically negotiated transaction. It was not a nationwide act of the Federal Government, emanating in a single form from a single source.

*Id.* at 345–48, 86 S.Ct. at 503. [Footnotes omitted.] It may also be seen that state law was applied to determine the *interest* acquired by the government agency; no state law was applied to defeat an otherwise perfected security interest.

**4.** In United States v. E. W. Savage & Son, Inc., 475 F.2d 305, 306 n. 1 (8th Cir. 1973), we noted the conflict between the circuits on this question and declined the opportunity to reaffirm our position in *Kramel.*

for uniformity in administering the Farmers Home Administration program and the policy of promoting the security of federal investment should be subordinated to a state interest in "quick flow of commerce in livestock," Majority Opinion, page 842, note 2, the appropriate remedy is by legislation.

## ON REHEARING EN BANC

Before GIBSON, Chief Judge, and LAY, HEANEY, BRIGHT, ROSS, STEPHENSON, WEBSTER and HENLEY, Circuit Judges, En Banc.

PER CURIAM.

The Court adopts the majority opinion in *United States v. Chappell Livestock Auction, Inc.,* 514 F.2d 660 (8th Cir. 1975).

Chief Judge GIBSON and Circuit Judges BRIGHT and WEBSTER adopt the dissenting opinion filed by Circuit Judge WEBSTER on the same date. *Id.* at 843–845.